MILLIGAN (THOMPSON v.).    See Case No. 13,969.

———

## Case No. 9,607.

### MILLIGAN & HIGGINS GLUE CO. v. UPTON.

[1 Ban. & A. 497; 4 Cliff. 237; 6 O. G. 837; Merw. Pat. Inv. 267.] [1]

Circuit Court, D. Massachusetts.   Oct., 1874: [2]

PATENTS — REISSUE — JURISDICTION OF COMMISSIONER—NOVELTY—INVENTION—COMMINUTED GLUE.

1. Jurisdiction to reissue patents is vested in the commissioner, and his decision, upon an application for a reissue, is final and conclusive, and not re-examinable in a suit for infringement, in the circuit court, unless it is apparent, upon the face of the patent. that the commissioner has exceeded his authority. or there is such a repugnancy, between the old and the new patent, that it must be held, as matter of legal construction. that the new patent is not for the same invention as was embraced and secured in the original.

[Cited in Thomas v. Shoe Machinery Manuf'g Co., Case No. 13,911.]

2. The principles. governing the awarding and granting of reissues of patents, examined.

3. Articles of manufacture may be new in a commercial sense, —when they are not new in the sense of the patent law; and the mere reduction of an article of bulk. to one of a smaller size, is not, in general. the subject of a patent

as a new manufacture, unless the properties of the article are improved by the introduction of some new ingredients, or by the subtraction of one or more of the ingredients of the original article, by which the new product is improved and made more useful.

4. The rule that new articles of commerce are not patentable as new manufactures, unless it appears, that the production of the new article involved the exercise of invention or discovery, beyond what was necessary to construct the apparatus for its manufacture or production, reaffirmed, and the authorities, sustaining it, examined and approved.

[Cited in Union Paper Collar Co. v. Van Deusen, 23 Wall. (90 U. S.) 563; Dunbar v. Myers, 94 U. S. 199; Lalance & Grosjean Manuf'g Co. v. Haberman Manuf'g Co., 5 C. C. A. 111, 55 Fed. 297: Campbell v. Bayley, 11 C. C. A. 284, 63 Fed. 465.]

5. A reissued patent, claimed comminuted glue as a new article of manufacture. The patented glue was made by cutting or rasping the common commercial glue, so that its large flakes were reduced to small particles. The mechanism, by which this result was accomplished, was not claimed in the patent. The advantages of the patented glue, over the glue in its commercial form, were said to be: 1st, that the particles of the glue being smaller, presented a greater surface to the soluble action of water, and thereby insured its more speedy solution; 2d, that the patented glue could be more conveniently put up in small packages. for domestic use and for the retail trade, than the glue in flakes, and with less danger of loss. Unimpeached proof was exhibited in the record, showing that flake or commercial glue had been ground into small particles, long before the alleged invention, and that the glue comminuted by this and other means than those described in the specification, is as readily dissolved and prepared for practical use, as the patented glue: Held, that the reduction of the glue as manufactured in flakes, to small particles. as described in the specification of the complainant's patent, does not involve the exercise of invention or discovery, without which, the product of the described process or apparatus, cannot be regarded as a patentable improvement.

[Cited in Alcott v. Young, Case No. 149; Snow v. Taylor, Id. 13,148.]

[Bill in equity for the infringement of reissued letters-patent No. 4,072, July 12, 1870, for improvement in the manufacture of glue. Complainants charged infringement, and prayed for an account of all such gains and profits as the respondent (George Upton) has thereby made, and for an injunction. Respondent denied the charge of infringement, and set up several other defences upon the merits, as follows: 1. That the original patent was not the proper subject of a surrender, as it was neither inoperative nor invalid, and that it was not lawfully reissued, as the reissued patent was not for the same invention as was the original patent. 2. That the alleged improvement was not, at the date of the assumed invention thereof, the proper subject of invention, nor a novelty proper to be secured by the grant of valid letters-patent. 3. That the alleged invention, before the alleged making or discovery thereof, was known to and used by the several persons named in the answer, and was described in the several mechanical and scientific works therein mentioned. 4. That neither the patentee nor the complainants ever used or employed the pro-

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and by William Henry Clifford. Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 1 Ban. & A. 497, and the statement is from 4 Cliff. 237. Merw. Pat. Inv. 267, contains only a partial report.]

[2] [Affirmed in 97 U. S. 3.]

cess, or the mechanical instrumentalities, or the mode of operation, described in the specification.] [3]

Walter Curtis, for complainant.
G. L. Roberts, for defendant.

·CLIFFORD, Circuit Justice. · 1. Patentees, whenever their patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention more than he had a right to claim, as new, may surrender such patent, if the error arose by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention; and, in that event, it is made the duty of the commissioner, on payment of the duty required by law, to cause a new patent to be issued to the patentee for the same invention, and in accordance with the corrected specification. 16 Stat. 206.

Neither reissued nor extended patents can be abrogated by an infringer, in a suit against him to recover damages for unlawfully making, using or selling a patented invention, upon the ground that the letters patent were procured by fraud in prosecuting the application for the same before the commissioner. Jurisdiction to reissue patents, is vested in the commissioner, and his decision, in such an application, is final and conclusive, and not re-examinable in a suit in the circuit court, unless it is apparent, upon the face of the patent, that the commissioner has exceeded his authority, or that there is such a repugnancy between the old and the new patent, that it must be held, as matter of legal construction, that the new patent is not for the same invention as that embraced and secured in the original patent. Seymour v. Osborne, 11 ·Wall. [78 U. S.] 516. Power to surrender patents, for the purposes suggested in the act of congress, implies that the specification may be corrected, to cure the defect and to supply the deficiency; but interpolations, in a reissued patent, of new features, or ingredients, or devices, which were neither described, suggested nor substantially indicated in the original specification, drawings or patent office model, are not allowed. Battin v. Taggert, 17 How., [58 U. S.] 74; O'Reilly v. Morse, 15 How. [56 U. S.] 62; Sickles v. Evans [Case No. 12,839]; Cahart v. Austin [Id. 2,288]. Nor is parol testimony admissible, in an application for a reissue, to enlarge the scope and nature of the invention, beyond what was described, suggested or substantially indicated in the original specification, drawings or patent office model, as the purpose of a surrender and reissue is not to introduce new features, ingredients nor devices into the patent, but to render effectual the actual invention for which the original patent should have been granted. Whether a reissued patent is, or is not, for the same invention as the surrendered original, cannot be satisfactorily determined, without a comparison of the two, as the decision must necessarily depend very largely upon the question, whether the specification and drawings of the ·reissued patent are, or are not, substantially the same as those of the original; and, if not, whether the changes or alterations are, or are not, greater than the act of congress, granting the power of surrender and reissue, allows.

Attention will first be called to the original patent, in the specification of which, the patentee states that, he has invented a new and useful article of manufacture, which he therein denominates instantaneous glue. He then points out certain objections to the glue of commerce found in the market at that date, as follows: (1) That a long time is required to prepare the glue for use, first by soaking it in cold water, and afterward in heating it in a hot-water bath. (2) That the glue, when thus prepared, is still often imperfectly dissolved. (3) That dry glue and gelatine, prepared in that way, are frequently rendered unfit for adhesive or dietetic purposes, or for any domestic use. (4) That it is difficult to make up small packages of such glue for retail, as the flakes have sharp angular edges, and would cut the wrappers, occasioning much waste of time and stock. His invention, as he states, obviates all those objections to the common glue, and consists in an article of glue which does not require to be prepared for solution by soaking; that it can be dissolved in large quantities, so as to be ready for mechanical ·use in less than five minutes, and in small quantities, for domestic use, in less than one minute; and can be put up in small packages, by machinery, or by hand, of uniform size and of regular form and weight, similar to those in which ground spices and other like articles are put up for domestic use, and to be sold by ·retail merchants. Its whole substance, and all of the ingredients of the patented glue, are the same as the common glue, nor does the patentee set up any different pretence. But he does state that, the patented product is superior to the glue of commerce, in that it has an appearance more pleasing to the eye; ·and that glues of the same grade, if subjected to his process, have apparently a whiter color, and are, therefore, more . marketable, and will bring a higher price. Minute description is then given of the process of making the patented glue, and of the mechanical means employed to accomplish the object, which consists, as represented in the specifications, of a hopper, into which is mounted two sawrolls, resting in suitable bearings, and running as indicated in drawings, and are propelled by power-pulleys, gears or other suitable mechanism. Particular description is also given of certain devices, such as are shown in the drawings, to crush the flakes of glue deposited in the hopper, and of other devices to prevent the contents of the hopper from falling out through the openings be-

[3] [From 4 Cliff. 237.]

tween the saws, and to prevent the saws from fouling by means of any foreign matter during their revolution. Flakes of glue, of the ordinary kind, are put into the hopper, and, by the rotation of the toothed saw-rolls, the flakes of glue are crushed into small and quite uniform pieces, about half the size of a barley-corn. Figure 3 of the drawings also shows another apparatus, which is a finer cutting machine, to which, as the representation is, the coarse product of the prior machine is subsequently to be subjected. Briefly described, it also consists of a hopper, to be used to receive the product of the prior operation, in the lower part of which run two rasping-rolls, by the rotation of which, in connection with the ancillary-described devices, the glue stock is cut as fine as required, when the new product passes off to a receptacle beneath the machine. Separate description of the different devices is given, which shows, beyond all doubt, that the fine cutting, as there represented, is done by rasping-rolls, or rolls with rasping faces. Conclusive support of that theory is derived from the description given of the particles composing the product of the second apparatus, which is, that they are of a "curved, scale-like form, which renders the rasped glue a loose, light, open. incompact mass," and of a character to remain so, until quite dissolved.

What the patentee claimed, in that patent, is "instantaneous glue," in which claim he expressly includes gelatinous or grutinous substances, called glue, produced by the process of disintegrational fine cutting, akin to rasping, by which the particles are made thin, scale-like, curling, and are thoroughly fractured, so that they form a loose, incompact mass, readily permeable to and solvent in, hot water. Alterations, consisting of omissions, and, in some cases, of additions, as well as obvious change of phraseology, are unmistakably noticeable in the specifications of the reissued patent, as compared with the specification of the original patent; but, inasmuch, as the legal purpose of a surrender and reissue, is, that a patent, which was before inoperative or invalid, by reason of a defective or insufficient specification, may be replaced by one which is operative and valid, it becomes necessary to look with care into the nature and scope of the actual alterations made in any given case, before deciding whether they are such as are allowable under the power conferred by the act of congress, or whether they are such that it must be held that the invention, secured by the reissued patent, is not the same as that embodied in the surrendered patent. Mere changes of phraseology will not be noticed, as it may be assumed that they are not of a character to affect the rights of the parties in the case. Material omissions and additions will be noticed, of which the following are the most important: (1) Two passages in the specification of the original patent are entirely omitted in the

reissue patent, as follows: (a.) That "the form of each tooth" (referring to the teeth in the rasping-rolls of the fine cutting machine), "should be such as to give to each particle of glue cut off, a curved, scale-like form, which renders the rasped glue a loose, light, open, incompact mass," etc. (b.) That passage preceding the technical claim, in which the patentee states that what he desires to secure by letters patent is any of the gelatinous or glutinous substances commonly called glue, produced by the process of disintegrational fine cutting, akin to rasping, by which the particles are made thin, scale-like, curling, and are thoroughly fractured, so that they form a loose incompact mass, readily permeable to, and solvent in, hot water. (2) Important words are also omitted in several other parts of the specification, such as "fine cut," "fine cutting," and the words "cut" and "cutting" in several places, when used to describe the action of the rasping machine, or the second apparatus to cut finer the product of the first described operation. (3) Additions, suited to support a corresponding theory, are also made in the claim and in the disclaimer of the reissued patent. "Comminuted" is substituted for "instantaneous," in the claims, as the prefix of "glue"; but the change in the disclaimer is much greater, as the language employed tends strongly to support the theory that the patentee, instead of regarding his means or apparatus as one designed to reduce the flakes of glue by a rasping process, intends to claim for it the function of a crushing machine, which is evidenced by the fact that he omits the introductory sentence of the disclaimer of the original specification, in which he describes his process as one akin to rasping, and also, from the language of the disclaimer itself, as exhibited in the reissued patent. Material alterations are also made in the body of the new specification, as compared with the old, of which the following is, perhaps, the most material. "My invention," says the patentee in the original patent, "consists in an article of glue, which does not require to be prepared for solution by soaking;" but, in the reissued patent, he says, it consists of glue comminuted to small particles of practically uniform size, as distinguished from the glue in angular flakes, hitherto known.

Based upon these, and other differences between the two patents, it is insisted by the respondent, that they show that the issued patent is not for the same invention as that secured by the original patent; and it must be admitted that the changes made, including omissions and additions, tend pretty strongly to support the proposition. But the question of construction is still open, which must first be determined, before any conclusion can be formed, whether the invention described in the reissued patent is or is not substantially the same as that secured by the

original patent. Alterations of the kind may or may not have the effect to change the character of the invention, as matter of legal construction; and, if they do introduce new features into the improvement, and materially enlarge the scope and operation of the patent, beyond what was described, suggested, or substantially indicated in the original specifications, drawings, or patent office model, it follows, that the defence that the reissued patent is not for the same invention as the original, must prevail, and it becomes the duty of the court to declare the reissued patent void.

Courts of justice will avoid such a result, if they can reasonably do so, by a liberal application of the maxim, that letters patent are to receive a liberal construction, and, if practicable, to be so interpreted as to uphold and not to destroy the right of the inventor. Turrill v. Railroad, 1 Wall. [68 U. S.] 401; Ames v. Howard [Case No. 326]; Blanchard v. Sprague [Id. 1,518]. Slight changes will not sustain such a defence, nor will the court, in any case, declare the patent void on that account, if by the true construction of the two instruments, each being taken as a whole, the invention, secured by a reissued patent, is not substantially different from that embodied in the original patent.

Flakes of glue, reduced to small particles, may be called "comminuted glue," whether the change is effected by breaking, pounding, rasping or grinding, or by any other known means of pulverizing or of reducing the common flakes to small particles, so that there is not necessarily any substantial repugnance between the claims of the respective specifications. Exactly the same description is given of the apparatus or machinery, and the process used, or represented as used, in making the alleged new manufacture, in the new patent, as in the old; and the description there given, taken as a whole, is equally full, to show that, the new manufacture, as described in both specifications, is the product of the rasping or fine cutting machine, to the action of which, the coarse stock, so called, is subjected, after it is discharged from the first described apparatus; which alleged new manufacture consists of particles of glue, first broken from flakes, into what is called coarse stock, and then rasped or cut from the coarse stock by the rasping or fine cutting machine, which latter product is minutely described, in the specification of the original patent, as particles of glue of a curved, scale-like form, constituting a loose, light, open, incompact mass, which, during the course of solution, will remain thus loose, light, open, and incompact, until quite dissolved. Taken as a whole, it is quite clear, that the patentee, in the original patent, never intended to claim, as his invention, anything, except the glue produced, as therein described, by the process of disintegrational fine cutting, akin

to rasping, by which the particles are made thin, scale-like, and curling, so that they will form a loose, incompact mass, readily permeable to, and solvent in, hot water. Nothing more than that is either described or suggested in the original patent, nor is anything more substantially indicated, either in the drawings or the samples of the alleged new manufacture sent to the patent office, at the time he applied for a patent. More than that, he did not pretend to claim, nor would the patent have been valid if more had been granted, as the specification, filed, would not have been a compliance with the terms of the act of congress, which require the applicant for a patent to file in the patent office a written description of the invention and of the manner and process of making and using the same, in such full, clear, concise and exact terms, as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make and use the patented improvement. Expressions undoubtedly, are contained in the specification of the reissued patent, which indicate, pretty strongly, an intent to give it a broader scope and effect; but it is a sufficient answer to everything of the kind to say, that the apparatus and process described for making and using the alleged new manufacture are precisely the same in the reissued patent, as in the specification of the original patent, and it is plain, as anything in the principles of mechanics can be, that the described process and apparatus are not suited to produce any other product, than that for which the original patent was granted. Attempts are now made, in argument, to expand the reissued patent, so as to cover the product of glue flakes when reduced to small particles, whether the reduction is effected by breaking the flakes, or by pounding, rasping or grinding the same, or by any other known means of reducing the ordinary glue flakes from their usual size and form to small particles, in order that the mass of particles may be more readily soluble in water, and be more conveniently put up in small packages for the retail trade. Sufficient has already been remarked to show that such a theory cannot be sustained, as the description of the apparatus and process of making and using the alleged new manufacture, is repugnant to any such conclusion. Strong support to the opposite conclusion, is also derived, from the description of the product or alleged new manufacture, as twice given in the specification of the original patent. Confirmation of the same view, of a conclusive nature, if any more be needed, is also found in the disclaimer, contained in the specification of the reissued patent, in which the patentee states, that he does not claim the mechanism or process by which his alleged new article of manufacture is produced, and in which he admits, in express terms, that other means of

crushing or reducing the glue flakes may be used to manufacture the alleged new article, without infringing his alleged invention, which, is entirely obvious, unless the whole description of his process and apparatus, as given, both in the original and reissued patents, be altogether rejected, as without meaning. Viewed in the light of these suggestions, as the case should be, I am of the opinion, that the defence,. that the reissued patent is not for the same invention as the original patent, is not sustained; but that conclusion, it must be understood, is based upon the theory, that the reissued patent, when properly construed and defined, covers only the alleged new manufacture produced by the process and apparatus described in the specification of both patents.

2. All the other defences set up in the answer are still open, and the respondent contends, in the second place, that the supposed improvement is not the proper subject of invention, and that it was not a novelty, at that date, which could properly be secured by the grant of valid letters patent. Persons who invent or discover new and useful manufactures, are as much entitled to patents, as those who invent or discover new and useful arts, machinery, or compositions of matter; but the right to a patent for such an invention or discovery, is subject to the same conditions, as are annexed by law to the right to a patent for any one of the other classes; consequently, the manufacture must be new and useful, and it must be one not before known or used by others in this country, and one not before patented nor previously described in any printed publication in this or any other country, nor have been in public use or on sale for more than two years prior to the application for a patent. Instruments of this kind usually contain allegations averring a compliance with those several conditions. but all such allegations are open to review by the courts, when properly presented as a defence. Patents in certain cases may, doubtless, be granted, both for the manufacture, and for the process or method of producing the same, if both are new and useful; and no doubt is entertained, that the two inventions or discoveries may be secured by separate patents, or that they may both be included in the same original patent, if made the subject of separate and distinct claims. Goodyear v. Providence Rubber Co. [Case No. 5.583]; Providence Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 796. Articles of manufacture may be new, in the commercial sense, when they are not new, in the sense of the patent law, as, in the case of the reduction of a substance from a larger to a smaller size, where the properties remain the same, as they were, before the reduction was effected.. Old substances may be converted into new ones by being compounded with other ingredients, where such other ingredients have the effect to render the compound more effective or efficacious, or to change the properties of the original substance, if the compound produced, involves the exercise of invention or discovery, and is both new and useful. New composition of matter is expressly embraced in the category of patentable improvements, and the very term implies, that the product differs materially in its properties from what was previously in common use; but the mere reduction of an article of bulk to one of a smaller size, is not, in general, the subject of a patent as a new manufacture, unless the properties of the article are improved by the introduction of some new ingredients, or by the subtraction of one or more of the ingredients of the original article, by which the new product is improved and made more useful.

Ground gypsum, or plaster, is comparatively a new article of commerce, but it was never patentable as a new manufacture, as wheat and other grain were ground at a much earlier period in the history of civilization. Refined sugar was formerly put up and sold in the lump, or in loaves. Since that time, the refined sugar is pulverized and sold, in the market, in that form. Such pulverized sugar is comparatively a new article of commerce, but it was never patentable as a new manufacture, as, at the time it was introduced, it was matter of common knowledge that it could be pulverized in the mortar, or by other well known means in common use. Spices are now ground, instead of being pounded in the mortar, and in that form they are sold for general use. Such an article is comparatively new, in the commercial sense, but was never patentable, as the ground spice possesses no different properties from the unground spice, or such as is pounded in a mortar, or from that which is comminuted by any process.

Machines for grinding gypsum, spices or coffee, or for pulverizing refined sugar, if new and useful, may be the proper subjects of valid letters patent, but the article of commerce produced by such machines was never patentable, as the grinding did not produce any change in the properties of the unground article, nor did the work of grinding involve the exercise of any invention or discovery, beyond what was necessary in preparing the apparatus to accomplish the work. Small manufactures of iron, such as nails, were formerly, within the memory of man, made from iron in the bar, by heating the bar in a forge and by drawing the iron out into a rod, on the anvil, by the hammer and sledge, or by first cutting the heated bar into rods by means of a chisel. Subsequently, rolling machines were constructed, by which the bars of iron were flattened, and machinery was also devised, by which the flattened bars were cut into strips, called nail rods. Nail rods immediately became an article of commerce; but the article was never patentable as a new manufacture, as its properties were not changed. and it was matter of common knowledge, that similar rods had, for a long

period. been made in the manner already described.

Two principal suggestions are made, to show that the comminuted glue may be patentable, as a new manufacture: (1) That the mass of particles are more soluble, when wanted for practical use, than the glue in flakes, as purchased in the market before the flakes are subjected to the patented process. (2) That the patented product may be more conveniently put up in small packages for domestic use and for the retail trade, than the glue in flakes, and with less danger of loss. Grant all that, still the suggestions are not sufficient to show that the comminuted glue is patentable, as a new manufacture, as the properties of the glue, in flakes, are not improved, and for the reason, that the change, effected by the described process, does not involve the exercise of any invention or discovery. Refined sugar, when pulverized, is more readily soluble in water, than when in the lump or loaf, and it is a matter of common knowledge, that small particles of any soluble substance are more readily dissolved in liquids, than large lumps or loaves of the same substance. Like many other substances, glue, when comminuted into small particles, whether the operation is effected by breaking, pounding, rasping, grating or grinding, is more readily soluble in water, than when the attempt is made to dissolve it in the flakes or other large bodies. Common experience is sufficient to verify that proposition, and the remark applies, with equal truth and potency, to many other articles, such as salt, refined sugar, gypsum, alum, camphor, gums of various kinds, and to many other substances in common use. Small particles present comparatively a larger proportion of surface to the liquid, into which they are put, than more bulky ones, in consequence of which, the substance, if permeable to liquids and soluble, will be more readily dissolved. Beyond doubt, glue, comminuted, is more readily soluble than glue in flakes, but the admission affords no support to the theory that comminuted glue is patentable, as the fact, that small particles of soluble substances are more readily dissolved in liquids than larger ones, is matter of common knowledge, and has been known for ages, whereof the memory of man runneth not to the contrary. Mere additional convenience in packing the comminuted article, as compared with the flake glue, proves nothing to support the theory of the complainant, as the fact has been matter of common knowledge for centuries. Much aid is derived in the investigation of the matters in controversy in the case, from the recent decisions of the patent office. Patents of the kind, it seems, were formerly granted without much consideration or scrutiny; but the recent decisions of the office, afford evidence of a more thorough and rigid investigation, and they appear to recognize, fully, the well-founded distinction between a new article of commerce, and a new manufacture, in the sense of the patent law, and, appear to fully comprehend the rule, that new articles of commerce are not patentable, as new manufactures, unless it appears, in the given case, that the production of the new article, involved the exercise of invention or discovery, beyond what was necessary to construct the apparatus for its manufacture or production. Six years ago, Commissioner Fisher, adopted that rule in a well-considered opinion, which it appears the patent office, for the most part, has since followed. Ex parte Ackerson, Com. Dec. 1869, p. 75. Commissioner Leggett applied the same rule in Ex parte Chatillon, 2 O. G. 115, in which he says, that invention is an essential prerequisite to a patent; and, it appears, that he rejected the application in the case, upon the ground that the applicant had simply substituted one device for another, without overcoming any obstacle, or making any discovery, or manifesting any invention. Acting Commissioner Thacher, also ruled in the same way, in a case which came before him, and in the course of his opinion, he censures the practice of granting patents, in such cases, where there is no invention, and pronounces it a fraud upon the public, to be condemned in the strongest terms. Bates v. Seeger, 2 O. G. 493. Views equally explicit, are expressed by Commissioner Leggett, in a more recent case. Ex parte Jerome, 3 O. G. 64. Great reliance was placed, in that case, by the applicant, upon the words "new article of manufacture," as sufficient to show, that the alleged improvement was patentable; but the commissioner decided, that those words will not have any such effect, and, he accordingly rejected the application. Repeated rulings, to that effect, have been made in the patent office, within the last two or three years, of which the following are referred to as examples: Ex parte Adams, 3 O. G. 150, where, it is pointedly stated, that the same rules apply, in determining the patentability of an article of manufacture, as in any other case. and that, in such a case, there must be evidence of novelty, and of invention. Proof of novelty and of invention, were also required in the case Ex parte Wattles, 3 O. G. 291, and the applicant failing to produce such proof, his application was refused. Ex parte Leggett, 2 O. G. 199; Ex parte Baxter, Id. 470;[*] Ex parte Beach, 3 O. G. 607.

Circuit judges, in this and other circuits, have made similar decisions, as will be seen from the following brief summary: Judge Shepley ruled expressly, in the case of Draper v. Hudson [Case No. 4,069], that a patent, for an article of manufacture, cannot be sustained, on the ground that it was fabricated by new and improved machinery; on the contrary, that the manufacture must be a new and improved thing in itself, possessing novelty of its own, independent of the devices, processes, or arts, by which it was produced. Precisely the same conclusion was reached,

by the judges of the circuit court for the second circuit, after full argument. Sawyer v. Bixby [Id. 12,398]. What the patentee claimed, in that case, was a new article of manufacture, called a package or case, which, when made with distributing holes, and filled, was cemented with wax or by wafers. Infringement was admitted, but the respondents set up as a defence, that the alleged invention was not, within the requirement of the patent law, an art, machine, manufacture or composition of matter, and, therefore, that it was not a thing for which a patent could lawfully be granted, as, at most, the patentee had only devised means, by which he could secure a larger sale of a given article, without having changed the article itself, or given it any additional value; and the circuit judge sustained the defence, upon the ground that the production of the article did not involve the exercise of any invention. Nothing short of invention or discovery, will support a patent for a manufacture, any more than for an art, machine or composition of matter, as is clearly illustrated in another case, decided in this circuit, Merrill v. Yeomans [Id. 9,472], where the circuit judge says, that a patentee, who has invented a process in the arts, whereby an article of manufacture is produced, new in kind, and not before known, may separately claim, and patent, both the art and the manufacture, if both are new and useful in the sense of the patent law; and, it is doubtless true, if the thing be new, in and of itself, it is patentable as a new manufacture, and that the patent would be infringed by the unlicensed construction or use of the product, though produced by other means than those described in the specifications of the patent. Inventions of the kind, are rare, as it much more frequently happens, that the process is inseparable from the product, so that the patentee cannot claim the product, if produced by hand tools or by other means substantially different from those employed by the inventor or discoverer. Patentees, in the former case, may claim the new product without qualification, but, in the latter, they should claim the product, only when made by the described means or their equivalent, as the process inheres in the manufacture, and constitutes an element of the invention. Neither claim, however, would be valid, unless supported by proof of invention or discovery, for which proposition, there is abundant authority in the decisions of the supreme court, and in the decisions of English courts. Hotchkiss v. Greenwood, 11 How. [52 U. S.] 265; Phillips v. Page, 24 How. [65 U. S.] 167; Jones v. Morehead, 1 Wall. [68 U. S.] 162; Stimpson v. Woodman, 10 Wall. [77 U. S.] 121; Knight v. Railroad [Case No. 7,882]; Bean v. Smallwood [Id. 1,173]; Winans v. Railroad [Id. 17,858]; Hicks v. Kelsey, 18 Wall. [85 U. S.] 673; Union Paper Collar Co. v. Van Deusen [Case No. 14,395]; Langdon v. De Groot [Id. 8,059]; Le Roy v. Tatham, 14 How. [55 U. S.] 175.

Apply the principle of these cases to the case before the court, and it is clear, that the patent cannot be sustained, as neither the process nor the means of effecting the result, nor the apparatus or its mode of operation, are new or different from what had long been known to those skilled in the art, nor does the operation of comminuting the glue in flakes have the slightest effect to change the properties of the substance, in any respect whatever. Comminuted glue, differs in no respect, from the ordinary glue of commerce from which it is manufactured, except in the degree of its fragmentary condition, as appears by the great body of the evidence in the case. Other substances, of various kinds, it must be conceded, have been mechanically reduced in size, in like manner; and, inasmuch as such articles, or some of them, bear a close resemblance to glue in flakes, which is unchanged in any of its properties, I am of the opinion, that the reduction of the glue, as manufactured in flakes, to small particles, as described in the specifications of the complainant's patent, does not involve the exercise of invention or discovery, without which, it is clear, the product of the described process or apparatus, cannot be regarded as a patentable improvement. Abundant support to that proposition is found in the English decisions, as well as in the decisions made in this country. Penn v. Bibby, 2 Ch. App. 136; Harwood v. Great Northern Ry. Co., 11 H. L. Cas. 667; Jordan v. Moore, L. R. 1 C. P. 635; Kay v. Marshall, 8 Clark & F. 261; Bush v. Fox, 5 H. L. Cas. 716; Ralston v. Smith, 11 H. L. Cas. 255; Tetley v. Easton, 2 C. B. (N. S.) 740; Horton v. Mabon, 12 C. B. (N. S.) 452; Ormson v. Clarke, 13 C. B. (N. S.) 340; Id. 14 C. B. (N. S.) 490; Parkes v. Stevens, 5 Ch. App. 39; Id. L. R. 8 Eq. 368; Patent Bottle Envelope Co. v. Seymer, 5 C. B. (N. S.) 173; White v. Toms, 17 Law T. (N. S.) 349; Losh v. Hague, 1 Webst. Pat. Cas. 208; Saunders v. Aston, 3 Barn. & Adol. 885. Support to the opposite view, it is supposed by the complainant, is drawn from the following cases: Winans v. Denmead, 15 How. [56 U. S.] 343; Young v. Fernie, 10 Law T. (N. S.) 864; Pennsylvania Salt Manuf'g Co. v. Gugenheim [Case No. 10,954]; Davis v. Palmer [Id. 3,645]; Le Roy v. Tatham, 14 How. [55 U. S.] 175, 22 How. [63 U. S.] 137.

But the court is of the opinion, that no one of these cases supports the theory of the complainant, as it satisfactorily appears, in this case, that flake glue, comminuted by other means than those described in the specification, is as readily dissolved and prepared for practical use as when the flake glue is comminuted by the patented process, and, that the ground glue may, with equal convenience, be put up in small packages, for the retail trade. Proof of the most convincing character, is exhibited in the record, showing that flake glue had been ground into small particles at a much earlier period of time, than the date of the alleged invention described in the

original patent; and several parcels of the ground product, together with the machines in which the product was ground, were introduced in evidence, which show, to a demonstration, that, if glue comminuted by grinding is substantially the same product as glue comminuted by the apparatus described in the said specification, the patentee was not the original and first inventor of the patented improvement. But, in the view taken of the case, it will not be necessary to decide that issue in the pleadings, nor whether flake glue, when ground, is substantially the same as flake glue comminuted by the apparatus described in the patent in suit, or substantially different, as will, presently, more fully appear; nor is it necessary to discuss either the third or the fourth propositions submitted by the respondents, as the court is of the opinion, that the complainant fails to show that it is entitled to a decree, for two reasons, other than those submitted in those propositions: (1) Because, the product of the process or apparatus described in the complainant's patent, was not patentable, as the production of it did not, in the sense of the patent law, involve the exercise of any invention or discovery. (2) Because, if the patented product, and the product manufactured by the respondents are substantially the same, then the original patentee was not the original and first inventor of the improvement, as flake glue was ground at a much earlier period than the date of the alleged invention; and, if the patented product is substantially different from the product manufactured by the respondents, then, it is clear, that the charge of infringement is not proved. Testimony was introduced by the complainant, to show that the ordinary glue of commerce is too moist to be conveniently ground, unless it is first dried, and that the process of drying it injures the quality of the article; but the court is of the opinion, that the suggestion is not entitled to weight, as it is a matter of common knowledge that no such difficulty arises, except with the newly-manufactured article, if the glue is deposited and kept from moisture. Grain and corn, in early fall, contain too much moisture for grinding, but they may be sun-dried for the purpose, and no doubt is entertained, that newly-manufactured glue may be dried sufficiently for grinding, without injury, in the same way. Bill dismissed with costs.

[The case was taken by the plaintiffs, on appeal, to the supreme court, where the decree of the circuit court was affirmed. 97 U. S. 3.]